ODIS CARR,

    Plaintiff,

vs.    No. 98-2084-G/Bre

STATE OF TENNESSEE, et al.,

    Defendants.

## ORDER TO COMPLY WITH PLRA
## ORDER ASSESSING FILING FEE
## ORDER OF DISMISSAL

Plaintiff, Odis Carr, an inmate in the Shelby County Correction Center (SCCC),[1] has filed an irregular document which the court construes as a complaint under 42 U.S.C. § 1983. The clerk of court shall file the case and record the defendants as the State of Tennessee, the City of Memphis, Shelby County[2], and the Regional Medical Center at Memphis (Med).

I. **ASSESSMENT OF FILING FEE**

Under the Prison Litigation Reform Act of 1995 (PLRA), Title VIII of Pub. L. 104-134, 110 Stat. 1321 (Apr. 26, 1996)(codified, inter alia, at 28 U.S.C. § 1915(b)), all prisoners bringing a civil

---

[1] The word prison is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

[2] Plaintiff also named the SCCC as a defendant. As the SCCC is not a suable entity, the court construes those claim against Shelby County, also a named defendant. See generally Hafer v. Melo, 502 U.S. 21 (1991).

This document entered on docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 3/27/98

affect or otherwise impact prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997). McGore sets out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal in this district of one of his cases as frivolous.

IT IS SO ORDERED this 26th day of March, 1998.

JULIA SMITH GIBBONS, Chief Judge
UNITED STATES DISTRICT COURT

11

§ 1914(a). The *in forma pauperis* statute, 28 U.S.C. § 1915(a) merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has not properly completed and submitted both an *in forma pauperis* affidavit and a prison trust fund account statement showing:

    1) the average monthly deposits, and
    2) the average monthly balance

for the six months prior to submission of the complaint, and

    3) the account balance when the complaint was submitted.

Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is ORDERED that within thirty (30) days of the entry of this order the plaintiff properly complete and file both an *in forma pauperis* affidavit and a trust fund account statement showing the above amounts. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the clerk of court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the

plaintiff's account and forward them to the clerk of court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the clerk of court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the clerk of this court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of
Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the court.

The clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The clerk shall not issue process or serve any papers in this case.

## II. ANALYSIS OF PLAINTIFF'S CLAIMS

Plaintiff sues the State of Tennessee, the City of Memphis, Shelby County, and the Med alleging he was denied proper medical treatment for a viral intestinal condition while housed at SCCC. Plaintiff was first treated by nurses at the SCCC and then was transported to the Med where he was treated by a physician and returned to the SCCC. He continued with treatment by the nurses at the SCCC without improvement and was finally transported by ambulance to the Med where he underwent x-rays and surgery.

As a threshold matter, the state of Tennessee is immune from suit under the Eleventh Amendment, which prohibits suits against a state in federal court. Pennhurst State Schl. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984); Quern v. Jordan, 440 U.S. 332 (1979). Furthermore, a state is not a person within the meaning of § 1983. Will v. Michigan, 491 U.S. 58 (1989). The plaintiff's claims against the State of Tennessee are therefore

4

barred by the Eleventh Amendment and do not fall within the purview of § 1983.

Additionally, there is no *respondeat superior* liability under § 1983. Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)(liability under § 1983 in a defendant's personal capacity must be predicated upon some showing of direct, active participation in the alleged misconduct). A city or county can only be held liable under § 1983 for a custom or policy that results in the deprivation of the plaintiff's constitutional rights. "The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). See also City of Canton, Ohio v. Harris, 489 U.S. 378 (1989); City of St. Louis v. Praprotnik, 458 U.S. 112 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). The complaint alleges no custom or policy on behalf of Shelby County that would support a claim that it "can be fairly said" to be the wrongdoer. Even construed liberally, the complaint relies only on the plaintiff's status as a prisoner, the custodial relationship between the individual defendant and the county, and its arrangement with the Med to provide medical services as the basis for plaintiff's claims that the county violated his rights.

Furthermore, plaintiff fails to make any factual allegations against the City of Memphis demonstrating the City of Memphis has any relationship whatsoever to this lawsuit. When a plaintiff

5

completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985).

Therefore, the claims against the State of Tennessee, the City of Memphis, and Shelby County lack an arguable basis either in law or in fact and are, therefore, dismissed as frivolous. See Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

The Eighth Amendment prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991). The Eighth Amendment proscription on cruel and unusual punishment prohibits prison authorities from displaying deliberate indifference to the serious medical needs of prisoners, because such indifference constitutes the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S.

6

at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

Within the context of Estelle claims, the objective component requires the medical need to be sufficiently serious. Hunt, 974 F.2d at 735. "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)(quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).

The Supreme Court has also clarified the subjective component--the intent of the prison official. See, e.g., Farmer, 511 U.S. at 834; Brooks, 39 F.3d at 128. Cf. Wilson, 501 U.S. at 302-03; Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992).

In order to make out a claim of an Eighth Amendment Estelle violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976). According to Farmer, deliberate indifference requires that the inmate prove that an officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." Farmer, 511 U.S. at 837. In considering the types of conditions that constitute a substantial risk of serious harm, the court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, i.e., that society does not choose to tolerate this risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993).

This complaint does not satisfy the subjective component of an Eighth Amendment claim. Because plaintiff required surgery after his second trip to the Med, the court assumes he suffered from a serious medical need. However, plaintiff admits he received treatment from SCCC nurses. He was also transported to the Med for treatment based upon his continuing complaints after that treatment. Plaintiff admits he underwent diagnostic testing and was treated by a doctor at the Med. Apparently, that doctor did not diagnose plaintiff's condition as requiring any other treatment than that which was rendered at that time. Plaintiff continued to receive treatment by the SCCC nurses after he was sent from the Med back to SCCC. Plaintiff was immediately taken back to the Med when a SCCC nurse diagnosed his condition as requiring surgery.

Plaintiff does not provide any allegations that anyone was deliberately indifferent to his medical needs. Plaintiff's own allegations show plaintiff was continually receiving medical treatment, and medical personnel were attempting to diagnose and treat plaintiff's condition. Those allegations show that the